Robinson *vs.* McDonald.

No. 14.—BOLLING H. ROBINSON, plaintiff in error *vs.* JAMES McDONALD, defendant in error.

[1.] In an action of Trover by an executor or administrator, who declares on his own *constructive* possession, and alleges the conversion after the death of the testator or intestate, it is necessary for him to introduce in evidence his letters testamentary, or of administration, on the trial, as a part of his title, to enable him to recover.

[2.] Where the defendant purchased a negro at Sheriff's sale, as the property of a third person, who was a stranger to the plaintiff's title, used him as his own, and exercised dominion and control over him, it was *held* to be sufficient evidence of a conversion to maintain trover, without evidence of a demand and refusal.

[3.] When the testator bequeathed certain negroes, at his mother's death, to his son Robert, his heirs and assigns forever; but, if Robert should live single, and die without a lawful heir of his body, the above property is to be equally divided between my three sons, James, John, and Lovett, it was held to be a limitation over upon an indefinite failure of heirs or issue, and therefore void, as being too remote, according to the rules of the Common Law, and vested the property in the first taker. *Held*, also, that if the bequest over had been good at Common Law, our Statute of 1821 would have vested the property in the first taker.

Trover. From Early Superior Court. Tried before Judge WARREN. October Term, 1846.

For the facts of the case, see the opinion of the Supreme Court.

TAYLOR, for the plaintiff in error, contended—

A remainder cannot be limited upon a fee simple conditional at Common Law. *Bedon* vs. *Bedon*, 2 *Bailey's R.* 231; 4 *Kent's Com.* 11, 12.

A charge upon lands given by devise, without words of perpetuity, will give a fee. *Dunlap* vs. *Crawford*, 2 *McCord's Ch. R.* 178.

Where personal property is given by will to the first taker, in words which would give an estate tail at Common Law, or a fee conditional in lands, and is then limited over, the limitation over is too remote, and therefore void, and the first taker takes an estate in fee simple; words giving an estate tail in lands, will give an absolute estate in personalty. *Henry and wife* vs. *Felder*, 2 *McCord's Ch. R.* 323; *Prince Dig.* 247; 1 *Nott & McCord*, 69.

If there be an absolute power of disposition given by will to the first taker, with remainder over, in all such cases the remainder is void, as inconsistent with the power of disposition expressly given

Robinson *vs.* McDonald.

in the will, or necessarily implied.   4 *Kent Com. Lect.* 59, *pp.* 233, 248, 264, 268, 273; *Jackson, ex dem. Brewster* vs. *Bull,* 10 *John. R.* 19.

A limitation repugnant to an estate given by will is void as a devise to A and his heirs, or a devise to A of all his estate; a limitation of the estate previously given is repugnant.   *Jackson* vs. *Robbins,* 16 *John. R.* 565; *Ide* vs. *Ide,* 5 *Mass. R.* 499; 15 *John. R.* 171; *Bradley* vs. *Peixoto,* 3 *Ves. Jr.* 324.

The word heirs not necessary to create an absolute estate in Georgia.   *Prince Dig.* 247; 2 *McCord's Ch. R.* 171.

A settlement of negroes, made by a father upon his daughter for life, and after her death to her children, but limited in the *habendum* to the heirs of her body, deemed too remote; so that the whole vests in the first taker.   *Stockton* vs. *Martin,* 2 *Bay's R.* 471; 4 *McCord's, R.* 198; *Fearne Cont. Rem.* 444.

A limitation of chattels to the heirs of donee, and on failure to issue of donor, manifests the intention of the donor to part with the whole estate.   *Powell* vs. *Brown,* 1 *Bailey R.* 100.

In support of the 3d position, that a demand and refusal were indispensable to be proven, in order to authorise a recovery in favour of the plaintiff; would refer to 2 *Starkie Ev.* 838, 9; 1 *Chitty's Plead.* 156.

The fifth and last ground, that the executor should have produced upon the trial his letters testamentary as a part of his title, the authorities are, that where the cause of action accrued since the death of the testator, or intestate, the executor or administrator sues in his individual and not his representative character; and his administration forms a part of his title and must be produced, although the defendant has not craved oyer, nor has pleaded in abatement.   *Browning* vs. *Huff,* 2 *Bailey's R.* 194; 2 *Starkie Ev. 4th part,* 548. 516; *Kirby* vs. *Quin, Rice R.* 264; *Hollis* vs. *Smith,* 10 *East R.* 293; *Bullard* vs. *Spencer,* 7 *T. R.* 358; 1 *Bailey,* 79; 2 *Bailey,* 319.

DEVON, and TOWNS & SMITH, for defendant in error, cited the following authorities:

On the *Probate,* 2 *Bla. Com.* 424; *Leigh's Nisi Prius* 1001.

On the *Limitation over,* 2 *Bla. Com.* 139; *Am. Ch. Dig.* 334; 1 *John. R.* 440; 10 *John. R.* 13; 16 *John. R.* 382; 20 *John. R.* 483; 1 *Roper on Legacies,* 87, 88, 401, 402; 2 *Roper on Legacies,* 372, 373; 1 *Peere Willms. R.* 563.

---
Robinson *vs.* McDonald.
---

*By the Court*—WARNER, J. delivering the opinion.

This was an action of Trover, instituted by James McDonald, the defendant in error, as the executor of William McDonald, against Bolling H. Robinson, the plaintiff in error, to recover the possession of a negro slave, by the name of Bob. On the trial in the Court below there was a verdict found for the plaintiff for the value of the slave, and his hire. The defendant below made a motion for a new trial on several grounds, which were all overruled by the Court. It appears, from the record, the plaintiff below claimed title to the negro, under the last will and testament of William McDonald, his testator, for the purpose of distributing the same to John, James, and Lovett McDonald, who, it is contended, are entitled to the property under the will. The first ground taken for new trial in the Court below was, that the Court charged the jury, "they were bound to consider the will as conveying to Robert McDonald a *life estate*, with remainder to John, James, and Lovett McDonald, the parties therein named."

The third ground taken for new trial in the rule was, that the Court below erred in charging the jury "that a demand and refusal was not indispensable to the right of the plaintiff to recover; that if the defendant had come into the possession of the negro man Bob by the delivery of the plaintiff, or as bailee, or by finding that a demand and refusal would have been necessary to be proved; but, coming into the possession by purchase at Sheriff's sale, and using the property as his own, receiving hire, and that conversion being proved, the plaintiff would be entitled to recover; the defendant's counsel insisting upon the Court to charge the jury, that the defendant not having come *tortively* into the possession of the negro man, a demand and refusal was indispensable to the plaintiff's right of recovery."

The fourth ground taken for new trial in the Court below was, " that the Court erred in refusing to charge the jury, that the cause of action having occurred since the death of the testator or donor, it was necessary for the plaintiff suing, in his character of executor, to have introduced his letters testamentary as a part of his title to make it complete, he having neglected to do so, was not entitled to recover; the Court having decided that, suing as executor, the defendant should have filed his plea in abatement at the first term of the Court, and craved oyer; that not being done, the

Court at this time would not require the production of the letters testamentary."

The second ground of error taken in the rule for new trial, was not insisted on in the argument before this Court, and therefore it is not considered.

The overruling the three grounds taken for new trial by the Court below, is now assigned for error in this Court.

We will first dispose of the question made as to the con- [2.] version of the property.

In *Liptrot* vs. *Holmes*, 1 *Kelly's R.* 381, this question was considered by us, and the rule established. In that case we said, "the action of trover being founded on a conjunct right of property and possession, any act of the defendant which *negatives* or is inconsistent with such right, amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise *a dominion over it in exclusion, or in defiance of the plaintiff's right?* if he does, that is in law a conversion, be it for his own or another person's use. But it is said, where a party comes *lawfully* into the possession of property, there must be a demand and refusal proved. This is undoubtedly true where the defendant finds the property, or where he gets possession of it by the consent *of the plaintiff*—the possession must be lawful as *against the plaintiff.* Demand and refusal is only *evidence* of a conversion. But, where the defendant gets possession of property as administrator in right of his intestate, or where he gets possession of it as a purchaser at Sheriff's sale, under an execution against some *third person*, and uses and exercises dominion over the property as his own, it is a conversion as against the rights of the plaintiff, who is *a stranger to the title under which the defendant claims.*"

From the evidence as disclosed by the record, it appears that Robinson purchased the negro at Sheriff's sale as the property of Robert McDonald, and that he exercised dominion and control over him while in his possession, which in our judgment was a conversion in law, as against *the rights of the plaintiff;* and evidence of demand and refusal was not necessary to have been proved on the part of the plaintiff to maintain his action; therefore, there was no error in the charge of the Court below to the jury on this branch of the case.

We are of the opinion the court did err in its judgment, in [1.]

Robinson *vs.* McDonald.

deciding that it was not necessary to introduce the plaintiff's letters testamentary as evidence to the jury. The plaintiff, in this case, declares on his own possession, and alleges the conversion since the testator's death. In 2 *Williams on Executors*, 1150, the rule is stated to be, " where the plaintiff declares *on a cause of action arising in his own time*, and makes *profert* of the letters of administration, and the defendant pleads the general issue, such plea does not admit the *plaintiff's title as executor or administrator*, and it *must be proved*." Where, however, the executor or administrator declares on the possession of his testator, or intestate, and alleges the conversion to have been in the lifetime of the decedent, his title as such executor or administrator, need not be established at the trial. *Idem* 1158. In the one case the executor or administrator claims the possession of the property in .his own right, and alleges the defendant converted it as against *his title;* and, therefore, it is incumbent on him to show his letters testamentary, or of administration, as part of his title, in all cases where the executor or administrator has not had the *actual possession of the property.* 2 *Greenleaf's Ev.* 272, *sec.* 338; 2 *Leigh's Nisi Prius,* 973; 2 *Saunders R.* 47, *note k; Browning* vs. *Huff*, 2 *Bailey's R.* 174. When the defendant denies the *character* in which the plaintiff sues, he should plead in abatement, as stated by the Court below; but here the plaintiff claims the *constructive* possession of the property by virtue of his title as executor, and to entitle him to the actual possession of it he must *prove his title* on the trial. Styling himself executor in his declaration, does not furnish *plenary* proof that he is such, when he alleges a conversion as against his own title by the defendant. To make out his case he must show title in his testator, and then show either his testamentary letters, or a certified copy of the will appointing him executor, probate thereof, and his qualification as such executor.

[3.] The testator, in the first clause of his will, gives to his son Robert McDonald, the following negroes: "Bob, Kate, and her six children, with certain real estate, at his mother's death; and, if Robert should live and die single, without a lawful heir of his body, the above property is to be equally divided between my three sons, James, John, and Lovett, to have and to hold the aforesaid property, and every part thereof, from me and my heirs, and every other person whatsoever, unto the said Robert McDonald, his heirs and assigns, forever."

This testamentary paper is dated 8th March, 1837, and was

proved and admitted to record in the Court of Ordinary of Baker County, at the May Term of the Court, 1844. On the trial of the cause the Court charged the jury, "that they were bound to consider the said instrument as conveying to Robert McDonald *a life estate, with remainder to John, James, and Lovett McDonald, the parties therein named.*"

The testator bequeaths the negroes, at the death of his mother, to Robert McDonald, his heirs and assigns forever; but, if Robert should live and die single, without a lawful heir of his body, the above property is to be equally divided between my three sons, James, John, and Lovett. The above is a concise statement of the bequest contained in this testamentary paper, and the question presented for our decision, who shall hold, Robert McDonald and the other parties, take under it in the property ?

The Court below held that Robert McDonald took a life estate only in the negroes, with remainder to the other three sons; but, on the argument before this Court, that position was abandoned by the counsel for the defendant in error, who insisted the limitation over to the three sons was good as an executory bequest, or, to use their language, good as an "executory devise." That this bequest did not convey a life estate to Robert McDonald, with remainder to the testator's three sons, we think is quite clear, for the reason there was no *particular* estate to support such remainder. 2 *Bla. Com.* 165. The bequest is to Robert and his heirs and assigns forever; but, if Robert dies without an heir of his body, his title is defeated, and the property goes over. Is the limitation over, good as an executory bequest? We think this bequest over to the testator's three sons, cannot be sustained according to the rule of the Common Law, independent of our statute; certainly not under the provisions of the Act of 1821. According to the rule of the Common Law, the limitation over must be confined to a stated period; it cannot be extended beyond a life or lives in being, and twenty-one years afterwards, to which may be added a few months more, to reach the case of a posthumous child. The time within which the limitation over is to take effect, should be *definitely* fixed by the testator, so as to bring it within the period prescribed by the rule, otherwise it will be considered as a limitation upon an *indefinite failure of issue,* and void. 2 *Bla. Com.* 174 ; *Atkinson* vs. *Hutchinson,* 3 *P. Williams,* 258; *Goodman* vs. *Goodright,* 1 *Bla. R.* 188; *Long* vs. *Blackall,* 7 *T. R.* 100.

The testator bequeaths the negroes to his son Robert, his heirs

and assigns forever; but, if Robert should die without a *lawful heir of his body*, the above property to be equally divided between my three sons, James, John, and Lovett. The *time* for the failure of the heir of the body of Robert is not defined by the testator; he does not say if Robert shall die without a lawful heir of his body *living at the time of his death*, or within the period prescribed by the rule, then the property shall go over; but the property is to go over to the three sons whenever there shall be no lawful heir of my son Robert to take it, whenever that event shall happen, without any fixed, certain, or definite period within which it must happen, as the rule stated requires. Mr. Fearne states the rule to be, " whenever an executory devise is limited to take effect after a dying without heirs, or without issue, subject to no other restriction, the limitation is void; for the policy of our law will not suffer property to be tied up and rendered unalienable, in expectation of such remote contingencies. As where lands are devised to A, and his heirs, and if A die without heir then to B, this limitation to B is absolutely void." *Fearne on Remainders*, 444, 445. " So where A devised to J. B, and his heirs forever, and if J. B should die without any heir, then he devised the estate to C; this limitation to C was held void, because too remote." *Tilbury* vs. *Barbut*, 3 *Atkyns R.* 617.

We deem it unnecessary to review the various decisions which have been made on this branch of the law, or to notice the subtle distinctions which have been taken between a devise of real and a bequest of personal property, as we feel satisfied the Common Law rule before stated, best comports with the genius of our institutions and the habits of our people, which requires executory devises and bequests to be strictly confined within the limits prescribed thereby; for it is a species of entailed estate, to the extent of the authorised period of limitations, which the people of Georgia have not been disposed to encourage, as their legislative enactments abundantly prove. Chancellor Kent says, " entailments are recommended in monarchical governments, as a protection to the power and influence of the landed aristocracy; but such a policy has no application to republican establishments, where wealth does not form a permanent distinction, and under which every individual of every family has his equal rights, and is equally invited by the genius of the institutions, to depend upon his *own merit and exertions.*" 4 *Kent's Com.* 20.

The limitation over to the three sons of the testator in this bequest not being restricted to a failure of an heir or heirs of the

Robinson *vs.* McDonald.

body of Robert, *living at the time of his death,* or within a life or lives in being, and twenty-one years afterwards, the right of the three sons to the property, in our judgment, depended upon an indefinite failure of issue or heirs, and was therefore void, as being too remote, under the rule of the Common Law. We adopt the rule in *Shelley's case,* that the term *heir, or heirs,* in a gift or conveyance, (without explanation or restriction,) are words of limitation, and not words of purchase. That it is not, nor ought not to be, in the power of the testator to prescribe a different meaning to the word heirs from what the law prescribes, when they are to take in their character as heirs; or, as was said by Lord Thurlow, in Jones *vs.* Morgan, "that whoever takes in the character of heir must take in the quality of heir. Let us now examine the acts of our own Legislature upon this subject. In 1799 there was an act passed to carry into effect a provision of the Constitution which declared " estates shall not be entailed." *Prince Dig.* 231. In the year 1821 an act was passed declaring "that all gifts, grants, bequests, devises, and conveyances, of every kind whatsoever, whether of real or personal property, made in this State, and executed in such manner, or expressed in such terms, as that the same would have passed an estate tail in real property, by the Statute of Westminister second, (commonly called the statute *de donis conditionalibus,*) be held and construed to vest in the person or persons to whom the same may be made or executed, an absolute unconditional fee simple estate."

The second section of the same act further declares, "all gifts, grants, fœffments, bequests, devises, and conveyances of every kind whatsoever, of real or personal property, hereafter made or executed within this State, shall be held and construed to vest in the person or persons to whom the same are made or executed, an absolute unconditional fee simple estate, unless it be otherwise expressed and a less estate mentioned and limited in such grant, gift, fœffment, bequest, devise, or conveyance." *Prince Dig.* 247. So it will be perceived that this testamentary paper, having been executed in this State since the passage of the above recited act, must be controlled thereby, which unquestionably defeats the right of the three sons to the property, even if the Common Law rule had given it to them. The effect of the Act of 1821, as operating upon this bequest, is to vest the absolute title to the property in Robert, the first taker; and the Court below, in our judgment, ought so to have instructed the jury. Let the judgment be reversed and a new trial granted.