Strong *et al.* *vs.* Middleton.

far as it does interfere.   This, however, is only my own view, and the court is not responsible for it.

Judgment reversed.

WINNY STRONG *et al.*, plaintiffs in error, *vs.* MILLY MIDDLETON, defendant in error.

Samuel Strong died testate in 1828.   By the fourth item of his will, executed in that year, he gave to his wife, Ann Strong, certain slaves and a tract of land, and divers other articles of personal property— "forever to do with as she pleases in fee simple."   By the fifth item he gave to his minor son, William, and to his heirs forever, certain slaves, and also the plantation whereon testator resided.   The seventh item is as follows: "I lend to my beloved wife, Ann Strong, as long as she remains a widow, or during her natural life, nine negroes, to-wit: Darby, Mariah, Rachel, Isaac, Nancy, Frank, Knob, Jacob and Burton.   Also, the use of my land and plantation whereon I now live, together with all my stock of every kind; my household and kitchen furniture, and everything on or belonging to my house or plantation, and it is my desire and will that my beloved wife keep peaceable and quiet possession of my house and plantation as it now is, keeping all together; and if my beloved wife should not marry, but remain single until my son, William Strong, comes of age, then I wish all the property I have lent to my wife to be equally divided between my said wife and my said son William, and for my said wife to hold her part until she either marries or dies, and at her marriage or death which happens first, then the part I have left her I give to my son William and his heirs forever; and if my said son William should die without a lawful begotten heir of his body, then I give all the negroes I have given him, to-wit: Winny, Nancy, Buck, Harry, Shibo and Gilbert, and one-half of the tract of land whereon I now live to the agent of the Colonization Society wherever he may be, in trust for the Colonization Society, for them to send the said negroes with their increase, to Liberia, Africa, that they may be free, and the money arising from the sale of the land to bear their expenses and support them one year when there. My will is for my wife, Ann Strong, to hold the other half of my land with the house and houses, stock of all kind, furniture and all things and articles thereunto belonging during her life, and at her death for all the negroes that I lent her, I give in trust to the above named agent of the above named Colonization Society, for them to send such said negroes to Africa to be free and the other half of this land to bear their expenses and support when there."   The negroes mentioned in

Strong *et al. vs.* Middleton.

this item as being loaned to Mrs. Strong, are not those given her absolutely in the fourth item.   Ann Strong, the widow, married in 1830, William then being a minor.   William, after the marriage of his mother, went into possession of the land mentioned in the fifth and seventh items, and continued in possession until 1867, when he died, and, as alleged, " without a lawful heir of his body begotten :"

*Held*, that at the marriage of Mrs. Ann Strong, William took an absolute estate in the land mentioned in the fifth and seventh items.

Will.   Estate.   Before Judge ANDREWS.   Oglethorpe Superior Court.   April Term, 1873.

Winny Strong and others brought complaint against Milly Middleton for the land mentioned in the fifth and seventh items of the will set forth in the above head-note, alleging that Ann Strong, the widow of the testator, married in the year 1830, while William Strong, the son of the testator, was still a minor; that after said marriage said William went into possession of the land in controversy, and continued in possession until the year 1867, when he died without a lawful heir of his body begotten ; that plaintiffs are the negroes, and the heirs of those who are dead, mentioned in the seventh item as to be sent to Liberia and made free ; that plaintiffs, prior to the death of the said William, became free by the laws of the United States and of the state of Georgia ; that they do not desire to go to Liberia but prefer remaining in the state of Georgia, and therefore pray that said land may be adjudged to belong to them, and that they may be placed in possession of the same.

The defendant demurred to the declaration upon the following grounds, to-wit :

1st.  Because the estate claimed passed only to the agent of the Colonization Society.

2d.  Because no suit could be brought under said will for said land for the benefit of plaintiffs, except by the executors of Samuel Strong.

3d.  Because neither of the plaintiffs, nor any of them, took any right, estate or interest in said land.

The court sustained the demurrer as to the half of the land

Strong *et al.* *vs.* Middleton.

mentioned in the first part of the seventh item, and overruled it as to the other half. Both parties excepted, plaintiffs assigning error upon said judgment as to the first half, and defendant as to the second half.

E. C. KINNEBREW, for plaintiffs in error.

W. M. & M. P. REESE; JOHN C. REED, for defendant.

TRIPPE, Judge.

Did the interest that Mrs. Strong took in the land mentioned in the seventh item of the will determine by her marriage, and if so did the fee, under the terms used in the will, vest in William Strong? An affirmative answer to these questions settles this whole case, or rather, both of these cases, and we think that the answer must be in the affirmative. By the fourth item of the will certain slaves, a tract of land and divers articles of personal property were given to Mrs. Strong, to be hers "forever, to do with as she pleases, in fee simple." Thus there was considerable property given to her absolutely, unaffected by her marriage or death, except as she might, by her own volition, dispose of it. This item does not touch the land in question. The next item does cover this land. It gives the land to his minor son, William, and his heirs forever—a pure fee simple, in unambiguous terms. By the seventh item he further gives to his wife certain other slaves, and encumbers this devise of the land to William by giving the use thereof to his wife during life or widowhood, to keep possession thereof if she remained single and unmarried until William became of age, then it was to be equally divided between the mother and son, and she was to hold her part until she married or died, and whichever happened first then her part thereof he gave to his son William and his heirs forever. Thus the testator first gave the fee to his son. The other provisions clearly show that he did not intend the fee to be encumbered by any interest in the mother, only whilst she was a widow, and that whenever she married the use given to her

Strong *et al. vs.* Middleton.

was to determine. There is a conflict in the provisions of the will, take it as you may. The construction we give it is the only one that seems to be consistent with the leading intent of the testator, to-wit: the widow was to take nothing of this land from the son, to whom it had already been devised in fee, unless, and only whilst she was a widow. This seems to be the construction which plaintiff's counsel put on the will, as is inferred from the declaration, and also was recognized by the court below in deciding on the demurrer. As to the disposition made in the latter part of the seventh item, of Mrs. Strong's half of this land at her death, it is in direct conflict, not only with the disposition made of it in the fifth item, but also with the remainder created in it to William in the previous part of the seventh item. Was not this portion or part of the land that was to go over on the death of Mrs. Strong to the Colonization Society, an interest that she was to have if she remained single until William attained majority, and continued single until her death? Take all the sentences together and it appears that the *halves* referred to were only those halves into which the land was to be divided if Mrs. Strong remained single. But Mrs. Strong did not remain single, and the fee vested absolutely in William by the express terms of the will at her marriage. The limitation over, if William should die without a lawfully begotten heir of his body, is void, as being too remote. In *Wallis and wife vs. Garrison*, 33 *Georgia*, 341, the bequest was to the wife, and "should she die without a natural heir of her body," then over. It was held that the wife took an unconditional estate. In *Hose vs. King*, 24 *Georgia*, 424, the words were: "and if she (the first taker) should die without leaving a lawful heir of her body," then the property was to go back to testator's estate, and they were construed to give an absolute estate to the daughter, who was the first taker: See 17 *Georgia*, 280; 20 *Ibid.*, 804; 21 *Ibid.*, 377; 28 *Ibid.*, 378. The question is not an open one, as to such cases as spring out of instruments which were operative before the adoption of the Code. Whatever difficulties may have been created by the two cases

referred to in 30 *Georgia Reports*, there have been several later ones which fully recognize the former rulings. Our conclusion is, that the decision of the court below in number three be affirmed, and reversed in number four.