No. 58.—JAMES CLAXTON and others, plaintiffs in error, vs. POLEMON L. WEEKS and NANCY WEEKS, defendants in error.

By the 4th item in the will of John P. Claxton, the testator says: "*in case of no heir*, I wish Nancy Claxton, as executrix, to give to my nieces, Susan Claxton, Jemimah Claxton, and Mildred Claxton, children of Pope Claxton, deceased, and the children of my brother, William Claxton, two thousand dollars, to be equally divided between them when she, Nancy Claxton, my executrix, thinks prudent, &c. *Held:*

[1.] That the words "in case of no heir," meant offspring to be begotten of Nancy Claxton by the testator.

[2.] That the words of the will do not create an estate tail.

[3.] That the property being certain, as well as the objects of the testator's bounty and the mode of disposition, the legacy is absolute, there being no opposition as to the gift, and the time of payment only being discretionary; and twenty years having elapsed, a reasonable time has transpired within which the money should have been paid.

In Equity, in Talbot Superior Court. Tried before Judge WORRELL, at April Term, 1856.

This bill was filed by James Claxton, John Claxton and others, legatees under the last will and testament of John P. Claxton, deceased, against Polemon L. Weeks and Nancy

Weeks, his wife, to recover a legacy claimed to be due to complainants under said will.

The following is a copy of the will under the fourth clause of which complainants claim :

" I, John P. Claxton, in the name of God, amen, being of sound mind, this is my last will and this body given to the earth from which it came, and good will to my country, to-wit :

I come first as to debts—thank God I owe but few, and give my executrix but little trouble ; Wyche M. J. Elder executor and Nancy Claxton executrix.

2. Secondly, as to the poor, I have treated them as my brethren, but dear wife have got no children, will, I hope, follow my example.

3. Thirdly, as to the wealth and property with which God has been pleased to bless me with, that we have labored together for it, and know with glad and grateful hearts, I leave it with her entirely.

4. Fourthly, in case of no heir I wish Nancy Claxton, as executrix, to give to my niece, Susan Claxton, Jemimah Claxton, Mildred Claxton, children of Pope Claxton, deceased, and the children of my brother William Claxton, two thousand dollars to be equally divided to them, when she, Nancy Claxton, my executrix, thinks prudent; the balance of the property at her death I wish for Benjamin Jones and the children of Elizabeth Champion, formerly, now Martha Culbree.

5. Fifthly, I give to her, said Nancy Claxton, all my ready money, accounts and notes, after my just debts is paid ; also all my horses, mules, hogs and cattle ; furthermore, corn and fodder, cotton, and all my lands.

6. Sixthly, my motive for giving all, is to prevent her from the frowns of this world to enable her to be charitable to the poor and needy ; and furthermore, to enable her to visit her friends and connections.

7. I wish my body to be buried decent in a plain coffin, neither lined nor covered.

JOHN P. CLAXTON, [L. S.]

Tested, signed, sealed and delivered in presence of

JAMES H. BURT.

JAMES J. HALL.

This 6th day of May, 1835."

The bill alleges that John P. Claxton, the testator, died in June, 1835, and his will was admitted to probate in the county of Harris, on the 6th day of July 1835, and his widow, Nancy Claxton, alone qualified as executrix. Afterwards, on the — day of — 184—, said Nancy intermarried with Polemon L. Weeks, and that said Weeks has possession of the entire estate. That testator died without having children. That he has been dead about sixteen years, and the legacy bequeathed to complainants in said 4th clause of the will has never been paid to them; they allege that they have demanded said legacy from defendants who refuse to pay the same, and deny their right to any part of testator's estate.

The bill prays that the defendants be compelled to pay over to complainants the sum of two thousand dollars bequeathed as aforesaid.

The defendants demurred to the bill for want of equity, and after argument had, the Court sustained the demurrer and dismissed complainants' bill, and thereupon plaintiffs by their counsel except and assign the same for error.

INGRAM, for plaintiffs in error.

JONES; and WELLBORN, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

We shall confine ourselves strictly to the case made by the record, as other interests, not at present before the Court, might be prejudiced. Are the complainants entitled to recover the two thousand dollars for which this bill is brought?

[1.] It was given to them, if at all, upon condition that there was no "heir." What is meant by the words in the 4th item of the will, "in case of no heir?" It is supposed to mean one of three things, to-wit: no heir *at law* of the testator's wife; no heir of her body, either begotten by the testator or any future husband, or no heir by the testator himself. I suggest, why restrict the words to the heir of the wife? May the clause not mean as well—perhaps more legitimately—no heir of the testator? If that be its signification it cuts off much of this discussion.

But grant that it means no heir of the wife, to which of of the three hypotheses as stated above does it belong? I remarked during the argument that it did not refer to an heir at law of the wife. It is apparent that it cannot. No one is the heir of the living, and yet this $2,000 is directed by the will to be given to the Claxtons, who are complainants, by the wife of the testator as executrix, and of course during her life. Its vesting, then, could not depend upon the existence or non-existence of an heir at law of Mrs. Claxton.

Did it mean an heir by a future husband? If we are to presume that the testator knew the law, this likewise is an impossibility. Because, as already remarked, this legacy was to be given over by his wife as his executrix; whereas, by the very act of marriage, her letters testamentary would be revoked, and the administration, with the will annexed, conferred upon the husband or any other person that the Court might see fit.

But suppose the testator was not aware of the act of 1828, and such is probably the fact, is it likely that he would make this legacy to his near relatives, depend upon an heir to his wife by a future husband? I have scrutinized this will carefully, and I am fully persuaded that the will was not made in prospect of immediate death, and moreover, the conclusion to my mind is irresistible, that the testator never contemplated a second marriage by his wife. He had ceased

to look upon offspring born to himself as a probability; he still thought of it as a possibility. He is disposing of estate, not with a view to make provision for children, but recollecting the ages of his wife and himself, he throws in parenthetically, as it were, "in case of no heir;" and this is all he says upon the subject.

Is it a supposable case that the testator intended that this gift of $2000 to his nephews and nieces to be paid to them by his wife as his executrix, and in the event of there being no heir, should wait until it was ascertained whether his wife would marry again and then be suspended upon the possibility of offspring by that future marriage before this gift was to take effect? No such thought ever entered the testator's mind. I appeal to every *husband* to repudiate such an unnatural interpretation. Our very love for our wives is outraged by such a construction. The days of stoicism are past when Cato will lend his wife to a friend, or a fond husband, (and such was John Claxton,) make provision by will for the children of his wife, to be begotten by a successor to his bed. No, he meant in case of no heir which should be the fruit of his own loins, and he meant nothing else.

[2.] Having ascertained then, what is meant by this term, let us next enquire what is the proper exposition of this will. Is this an estate tail special? Clearly not as to the two thousand dollars, the only subject now in controversy. The wife is not given a freehold in this two thousand dollars, and therefore a remainder in tail cannot be ingrafted upon it. But there is another reason: this two thousand dollars, limited to take effect upon the failure of an heir, was to be paid over by the wife as executrix. Of course the testator did not and could not have meant to limit this bequest upon an indefinite failure of issue. He would likely have directed this legacy to be paid at his death, but for the discretion which he chose to give to his wife as to the time of its payment; still that discretion was restricted to her own life at furthest. Suppose the testator had directed in so many

words the two thousand dollars to have been paid in five years in case there was no heir, could there have been any pretence that an estate tail special was created? Why should there be, when it is directed to be done by the widow as his executrix. For all the purposes of this argument the principle is precisely the same.

[3.] Lastly as to the form of this bequest; the rule of law is this: whenever the property, the legatee, and the mode of disposition are specified with sufficient certainty, and there is no option as to whether the legacy shall be paid, the bequest is good. Here the sum is definite, $2,000; the objects of the testator's bounty are the Claxtons designated in the will; and the fund is to be equally divided between them. The only discretion left is, as to the time of payment; twenty years have elapsed, and the phraseology used by the testator would seem to convey the idea that the legatee's interest rather than the widow's convenience was to be consulted and made the criterion of decision.

What estate by implication, if any, the heir would have taken, had there been any heir, or what estate the widow takes under the will as to the rest of the property, whether a life estate only in the whole or a fee to a part and a life estate in the rest, it is unnecessary and improper to express any opinion.

Judgment reversed.