EDMUND H. WORRILL, executor of David Shelton, plaintiff in error, vs. JOHN B. WRIGHT, adm'r. of Mary Martha Shelton, deceased, defendant in error.

A will containing a limitation over after a failure of issue, made before the passing of the Act of 1854, prescribing a rule for the interpretation of such words, but the testator dying after the passing of the Act, shall be interpreted as directed by that Act.

Equity, from Talbot county. Decision on demurrer by Judge LAMAR, March Term, 1858.

John B. Wright, administrator of Mary Martha Shelton, deceased, filed his bill against Edmund H. Worrill, executor of David Shelton, deceased, alleging that David Shelton died leaving a will, which was duly proved and recorded; and that E. H. Worrill, executor therein named, took upon himself the execution of the same; that by said will said Shelton gave and bequeathed to Mary Martha Shelton the following negro slaves, to-wit: Mary, a woman, and her children, viz: Fanny, Cherry, Julia, Cornelia and Louis; also Edmund, Virginia, Jim, Patterson, Davy, Emily, Ellick and Mary, together with the sum of $3000 00 in money, as specific legacies, to be her own right and property absolutely and unconditionally; that said Mary survived the said David, and afterwards, in 1855, she died intestate; that said executor, since the death of said David, has hired out annu-

ally said negroes and received therefrom large sums of money; that said executor has paid all the debts of said estate, and has still sufficient in his hands to pay off all the legacies given by said will; that during the life of said Mary Martha, he did not pay over to her the said legacy or any portion of it, nor has he since her death paid over the same, or any portion to complainant, but has failed and refused so to do, on the ground, that said legacy reverted on the death of complainant's intestate; whereas complainant denies the same and charges that the said legacy vested absolutely in said Mary Martha on the death of said David; and that he ought to receive the same in his capacity of administrator.

The prayer of the bill is that the executor be made to account for and deliver up the negroes, and money, &c.

The parts of the will upon which the bill is based, are in the following language:

"I hereby give and bequeath to my natural daughter Mary Martha Shelton, the following negro slaves, to-wit:" (same as are named in the bill.)

After directing the balance of his negroes to be divided into four equal parts, and providing specifically for his wife during life or widowhood, he goes on to say in the will:

"All the rest and residue of my estate, real and personal, whatsoever and wheresoever, of what nature, kind and quality soever, the same may be and not herein given and disposed of (except a small double barreled shot gun, which I hereby give my daughter Sarah) I wish to be sold by my executor hereinafter named, either at public or private sale, as to him may seem best; and of the monies arising from the sale of the same, I hereby direct and empower my executor hereinafter named to pay to my said natural daughter Mary Martha Shelton the sum of three thousand dollars. * *

"And should my natural daughter Mary Martha die without issue also, the negroes herein given to her are to return back to my estate, and be divided between my heirs at law. * * * * And the negroes and money

herein by me given to my said natural daughter Mary Martha, are for her sole and separate use, benefit and enjoyment."

"And to my friend Edmund H. Worrill I commit the management of her property, the care of her education and the guardianship of her person; and should he die before executing this trust, then to my friend Alexander R. Leonard I commit the guardianship of the person and property of my said natural daughter, with the request that he will take good care of her property, treat her kindly, watch over her welfare, and see that she is properly educated."

"And should any of the negroes I have herein given to my said natural daughter die, or become valueless from any cause or casualty, my executor hereinafter named is hereby authorized and fully empowered, in the place of such to put other negroes of like value, as near as the same can be ascertained."

Defendant demurred to the bill for want of equity, and moved to be dismissed from other or further answer to the same; which the Court overruled. Whereupon defendant excepted, and assigns the same as error.

WM. DOUGHERTY; SMITH & POU, for plaintiff in error.

A. F. OWEN; STUBBS & HILL, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The principal question presented in this record is, whether the provision in the will, that on the death of the natural daughter of the testator without issue, the negroes given to her in the will, are to return to the estate of the testator, to be divided among his heirs at law, is a legal provision.

It is unnecessary to go into the enquiry whether the terms of the will declaring a reversion of the negroes to testator's estate in the contingencies mentioned, would create an estate fail, if used in a will of lands in England, for the purpose of

ascertaining whether the limitation over to the heirs at law of testator is void, under the statute of this State. The Act of 17th February, 1854, settles that. The gift over is good under that Act, the legal import of the terms used being now a definite failure of issue.

It is argued that the Act referred to was passed after the will was made, which bequeathed the property to the intestate of plaintiff in the Court below, and that that Act does not change the rule of construction in regard to wills already made. A will cannot take effect until the death of the testator. It is, in fact, no will before. It passes and vests no right prior to the death. Such is not the case with other instruments made and executed for a consideration; they always pass an interest of some sort, and those instruments, whatever they may be, are irrevocable, except with the consent of the parties to them. A will may be made and signed with all the formalities required by the law, and it may be then delivered over to one of the persons named as a legatee therein, and yet it passes no right, and is not binding upon the person who makes it, he being still in life. He may change or annul it at his pleasure. The Legislature no doubt, intended to change a legal rule of construction immediately, when the change could not interfere with vested rights. The old rule it considered as, in many cases, disappointing the intention of testators and others, limiting over estates, when no corresponding public advantage was gained by its enforcement. Whether they took a correct view of the subject cannot be determined but by the practical operation of the new rule. But in construing the Act we must have respect to the object of the Legislature. Mr. Dwarris quotes a valuable rule from a distinguished author on this subject, who says that " that must be the truest exposition of a law, which best harmonizes with its design, its objects and its general structure."

To give this Act the interpretation, that the rule, which it prescribes, should apply to wills and other instruments,

which could have no effect whatever in passing a right from one person and vesting it in another, (although signed and delivered before the Act) prior to the passing of the Act, would seem to harmonize best with its design and object. Indeed, transpose half a dozen words, and we would have, perhaps, a correct reading of the statute, and one that would harmonize with the Legislative intention. Let it be read thus: "That after the passage of this Act, all wills, testaments and other instruments made and executed, by which property, either real or personal, is limited over, so as to vest in some other person, &c."

The words "made and executed" would not refer to the time of the passing of the Act, but to the substance of the will or instrument; that if it should be so made and executed as to limit over property, real or personal, so as to vest in some other person, &c.; and the words "after the passage of the Act," would refer to the time at which the new rule of construction would go into effect, viz. *immediately.*

But allowing the words to remain as the Legislature has placed them, and we think it cannot apply to wills made by testators who died after the passing of the Act.

This cause was argued before this Court exclusively on the claim set up by the complainants to the negroes and their hire, without reference to the legacy of three thousand dollars, and upon that view, excluding the pecuniary legacy from our consideration, we reverse the judgment of the Court below.

Judgment reversed