## Supreme Court of the State of Georgia,

### AT ATLANTA,

## AUGUST TERM, 1862.

PRESENT—JOSEPH H. LUMPKIN, ⎫
RICHARD F. LYON, ⎬ JUDGES.
CHARLES J. JENKINS, ⎭

33 341
f110 720

W. T. WALLS and wife, *et. al.*, plaintiffs in error, *vs.* THOMAS S. GARRISON, *et. al.*, administrators, defendants in error.

A testator bequeathed as follows: "I give and bequeath to my beloved wife, Mary Bird, the whole of the balance of my estate, and will that my mother, Susan Bird, live with her and be supported out of the same as long as she should live; and should my wife, Mary, die without a natural heir of her body, it is my will and desire that the whole of my estate go to my brother, William B. Bird:" *Held*, that Mary Bird took an absolute unconditional estate in the property.

In Equity, in Carroll Superior Court. Decision by Judge HAMMOND, at Chambers, on 13th June, 1862.

Plaintiffs in error brought their bill in equity to Carroll Superior Court, in which they allege that they are entitled, as the heirs-at-law and children of William Bird, who took an estate in remainder, under the will of Pue Bird, to the possesion of certain negroes and other property in the possession of defendants in error, who set up a claim to the property as the administrators of Mary Avery, deceased.

(341)

The bill alleges that Pue Bird departed this life in Putnam county, in the year 1827, leaving a will containing the following item: " I give and bequeath to my beloved wife, Mary Bird, the whole of the balance of my estate, and will that my mother, Susan Bird, live with her, and be supported out of the same as long as she should live; and should my my wife, Mary, die without a natural heir of her body, it is my will and desire that the whole of my estate go to my brother, William B. Bird, and that my brother, William B. Bird be appointed my ex."

Mary Bird, the widow of testator, took possession of the property, consisting of several negroes and other personalty, under the will, and intending to defraud William Bird and his children of their rights under the will, she, in 1830, sold certain of the negroes to one Thomas Espy, for the sum of $1,000 00, who carried them out of the State, and that she also sold the other negroes to certain persons unknown, for the sum of $1,000 00.

Mary Bird afterwards married one Avery, who died, leaving her surviving him.

That Mary Avery, herself, died childless in Carroll county, in 1861, having in her possession at the time of her death several negroes and other property, the whole forming an estate of about $10,000 00, which property she had bought with the proceeds of the sale of the negroes mentioned in the will, and fraudulently sold by her to defeat the interest of those in remainder. Complainants are all the children of William Bird, (the female part of them,) who died in 1846, and entitled by right of representation to the legacy in the will of Pue Bird.

The property held by Mary Avery, at her death, is in the hands of defendants in error, who have been appointed temporary administrators of her estate, and the bill prays a discovery of the facts charged, and a decree against defendants ordering them to deliver up the property to complainants, and to account for all the estate devised in the item of the will of Pue Bird.

To this bill defendants filed a general demurrer for want

Walls and wife, *et al.*, *vs.* Garrison *et al.*

of equity, which, by agreement, was heard before Judge Hammond, at Chambers, who, after argument had, sustained the demurrer, and dismissed the bill, and this is the error complained of.

FIELDER, for plaintiff.in error.

MERRILL, *contra.*

*By the Court.*—JENKINS, J., delivering the opinion.

The dispositive words in the will of Pue Bird are, "I give and bequeath to my beloved wife, Mary Bird, the whole of the balance of my estate; *   *   and should my wife, Mary, die, without a natural heir of her body, it is my will and desire that the whole of my estate go to my brother, William B. Bird." Upon the death of Mary Bird, leaving no lineal descendant surviving, is this limitation over good? This is not an open question in Georgia. In Hollifield, adm'r, vs. Stell, 17 Ga. R., 280; Childers vs. Childers, 21 Ga. R., 377, and Brown and others vs. Weaver and others, 28 Ga. R., 378, it is held that these and other equivalent words create an estate tail, under the statute *de donis conditionalibus,* and therefore under our Act of 1821, Cobb's Digest, 169, vest in the first taker an absolute unconditional estate, unless there be superadded words excluding the idea of an indefinite failure of issue. Are there such words in the clause under consideration?

It is contended that the limitation over, *to a person in being,* has that effect. But on that point it is expressly ruled otherwise in Hollifield, administrator, vs. Stell, *supra,* wherein several authorities sustaining the ruling are cited.

It is also insisted that the qualifying word *natural* ("natural heir of her body") has a restrictive effect, limiting the contemplated failure of issue to those springing immediately from the body of Mary Bird; in other words, to her children. But we are aware of no authority for this. The word *natural* has in law no technical meaning—nor indeed does usage, what we call common parlance, assign it any special

meaning in such a connection. It is sometimes applied to the word child to signify one born out of wedlock, but it would be preposterous to suppose that the testator contemplated a provision for such a child. Strip the words " heir of her body" of their technical meaning, and they would seem more restrictive to a descendant in the first degree than do the words "natural heir." In Carraway vs. Smith, 28th Ga. R., 542, the same form of expression was used, and no importance whatever was attached to the word " natural." The case was held to be within the rule of Childers vs. Childers, *supra*, wherein that word did not occur. We regard it a word uselessly thrown in, to which the testator himself probably attached no definite idea, unless it were the exclusion of collateral heirs, which would have been as effectually done without it. In this view the plaintiffs in error were not entitled to the relief sought, and this being apparent upon the face of the bill, a general demurrer was properly sustained.

Let the judgment be affirmed.