## HERTZ et al. v. ABRAHAMS, administratrix.

1. The intention of a testator, if legal, governs the construction of his will, and is to be ascertained from the words thereof. If he uses words which clearly create one estate though he designed another, his intention must yield to the rules of law.
2. A will is to be construed by the law existing when, upon the testator's death, the will takes effect. Whether words in a will made by a testator who died before the act of February 17, 1854, create an estate tail, is to be controlled by the decisions of the English courts construing such or similar words in devises of real property in connection with the statute de donis conditionalibus.
3. A devise to A for her separate use, and in case she has no issue, to B, before the act of 1854, is a devise limited upon an indefinite failure of issue, which, under the English rules of interpretation, created an estate tail by implication under the statute de donis, and is therefore enlarged into a fee-simple estate by our act of December 21, 1821. An executory devise which was limited upon words importing an indefinite failure of issue of the first taker, under the law when the will in this case took effect, was uniformly held to be void for remoteness.

Argued February 13,—Decided June 6, 1900.

Equitable petition. Before Judge Falligant. Chatham superior court. May 27, 1899.

U. H. McLaws and Saussy & Saussy, for plaintiffs.
Garrard, Meldrim & Newman, for defendant.

SIMMONS, C. J. The record discloses that Dr. Moses Sheftall, of Savannah, Georgia, made his last will in 1849, and died in 1850. By the first item of his will he devised the real property in dispute as follows: " I give and bequeath to my sister, Mrs. Perla S. Solomons, wife of Lizar Solomons, my brick store on Congress street, not subject to her present husband's debts or her future husband's debts, and in case my sister, Mrs. Perla S. Solomons, has no issue, the said store to go to my niece, Miss Nelly Sheftall Cohen, and to be settled on her; " which is equivalent to a devise to A for her separate use, and in case she has no issue, to B. There are no superadded words explaining the term " issue" in this item. In another item the testator devises a separate piece of real property to Mrs. Solomons, and in case she leaves no issue, to go to another niece. Mrs. Solomons, several years prior to her death in 1897, made her will and devised

the property in dispute to the defendant, who is her adopted daughter. The plaintiffs are the heirs at law of Miss Cohen. The contention of the plaintiffs is, that Mrs. Solomons, under the first item of the will, took a determinable or defeasible fee, and, upon her death without issue, the absolute title then passed to them as the heirs at law of Miss Cohen, the executory devisee. The contention of the defendant is, that the devise created an estate tail, which our act of December 21, 1821, converted into a fee-simple estate in favor of Mrs. Solomons, the first taker, and therefore the latter had the full right and power to devise the property in fee simple to the defendant in error. The court below sustained the last-given contention, and this is excepted to by the plaintiffs.

1. The intention of the testator must govern the construction of his will, if legal; and this intention may be conclusively shown by the unambiguous words of his will. If the intention, thus shown, is illegal, it must yield to the rules of law. Civil Code, § 3324; 10 Bacon's Abr. 533; *Choice* v. *Marshall,* 1 *Ga.* 102-104; *Carlton* v. *Price,* 10 *Ga.* 497; *Robert* v. *West,* 15 *Ga.* 123, 141; *Cook* v. *Walker,* 15 *Ga.* 465; *Smith* v. *Dunwoody,* 19 *Ga.* 259; *Carroll* v. *Carroll,* 25 *Ga.* 260; *Felton* v. *Hill,* 41 *Ga.* 569; *Gillespie* v. *Schuman,* 62 *Ga.* 253. As Judge Lumpkin aptly said in *Smith* v. *Dunwoody,* supra: " So long as a testator does not infringe the rules of law, he has the right to say, with Staberius, when he imposed an unpalatable condition in his will: Sive ego prave seu recte, hoc volui. But if he proposes doing an illegal act — as creating a perpetuity, or uses words to create one estate, when he designed another; in these and innumerable other cases which might be cited, his intentions will be defeated. How frequently are courts obliged to say, in the construction of wills, in conflicts between intention and technical rules and expressions, voluit sed non discit. "

2. The law governing the construction of this will is that which was in force when the will took effect upon the testator's death in 1850. *Sutton* v. *Chenault,* 18 *Ga.* 1, 4; *Worrill* v. *Wright,* 25 *Ga.* 657; *Bennett* v. *Williams,* 46 *Ga.* 399; *Lofton* v. *Murchison,* 80 *Ga.* 392; *Stone* v. *Franklin,* 89 *Ga.* 196. At that time, as well as when the will was made, the act of Decem-

ber 21, 1821, was of force. The first section of that act reads as follows: "That all gifts, grants, bequests, devises, and conveyances of every kind whatsoever, whether real or personal property, made in this State, and executed in such manner, or expressed in such terms, as that the same would have passed an estate tail in real property by the statute of Westminster second (commonly called the statute de donis conditionalibus), be held and construed to vest in the person or persons to whom the same may be made or executed an absolute unconditional fee-simple estate." Cobb's Dig. 169. The statute de donis, which was enacted in the year 1285, is called "the parent of estates tail." Before that statute, there existed no estates tail, express or implied, in England. Estates tail by implication arose in England under devises wherein a greater estate than for the life of the first taker was irresistibly inferred when the devise was to A, without the added words "and his heirs," and the same estate was limited over upon words importing an indefinite failure of issue; and hence, in such devises, as, to A, and if he dies without issue, to B, the devise was construed by necessary implication to be equivalent to a devise to A and his issue, and if he die without issue, to B, so as to bring it within the intent, if not the letter, of the statute de donis. Therefore, to ascertain whether the devise in the will now under consideration is "executed in such manner, or expressed in such terms, as that the same would have passed an estate tail in *real property* by the statute" de donis, we must look to the construction placed upon that statute by the English courts, especially prior to the American Revolution. *Gray* v. *Gray,* 20 *Ga.* 804 (3), 809. Such is also the presumed intent of our legislature as to the construction of all English statutes adopted in this State. *Brown* v. *Burke,* 22 *Ga.* 574 (3), 580. And, independently of these decisions, when our legislature used the words in the act of 1821, "as would have passed an estate tail in real property by the statute of Westminster second (commonly called the statute de donis conditionalibus)," they evidently had in mind and referred to the English decisions, previously rendered for centuries, upon the various expressions held by them to pass an estate tail in real property under that statute, rather than intended to

ignore those decisions or use the words "real property" in a supererogatory or useless sense, and refer this six-century-old statute to the respective judges of the superior courts, which were the highest courts then existing in this State, for their separate opinions on it.

3. The vital question, then, in this case is: Does the devise under the first item of the will create an estate tail under the statute de donis, which our act of 1821 converted into a fee-simple estate in favor of the first taker? If the term "in case she has no issue" imports an *indefinite* failure of issue, the devise was an estate tail by implication under the English law, and the executory devise was void for remoteness, and, e converso, if the term means a *definite* failure of issue, the devise, as the law stood prior to 1821, gave the first taker a defeasible or determinable fee, and the executory devise was valid. In 2 Jarman on Wills (Randolph & Talcott's ed.), 136, it is said: "It has been long settled, however, that a devise, in a will which is regulated by the old law, to a person and his heirs, or to a person indefinitely, with a limitation over in case he die without issue, confers an estate tail, on the ground, in the former case, that the testator has explained himself to have used the word 'heirs' in the qualified and restricted sense of heirs of the body, and in the latter case on the ground that he has, by postponing the ulterior devise until the failure of the issue of the prior devisee, afforded an irresistible inference that he intended that the estate to be taken by the prior devisee under the indefinite devise should be of such a measure and duration as to fill up the chasm in the disposition, and prevent the failure of the ulterior devise, which, as an executory devise to take effect on a general failure of issue, would, of course, be void for remoteness." Such, however, would not be true if the limitation over was upon a definite failure of issue, as "where the devise over is to take effect on the event of the prior devisee dying without issue *living at the death.*" Ibid. 138. That under the old English law (that is, prior to the English wills act of 1837) a devise to A, and, if he die without issue, to B, would be an estate tail by implication, as stated by Jarman, see also Smith on Executory Interests, § 564; Beach on Wills, § 195; 29 Am. &

Eng. Enc. L. 385. And that a devise to A for life, and, if he die without issue, to B, was also an estate tail by implication, see 2 Jarman on Wills, 136-138; Reese on Executors, 307. A devise to A and his issue, or to A, with remainder to his issue, and if he die without issue, to B, would be an express estate tail. Smith, Exec. Int. §§ 569-573; 3 Jarman, Wills, 94, 203. The only difference between an express estate tail and an estate tail by implication, both being dependent upon a limitation over upon an indefinite failure of issue, is that in the former there is an express devise to the issue, and in the latter such devise is necessarily implied from the ulterior devise being postponed until after a failure of issue generally of the first taker. Therefore, "issue" will be a word of limitation or not as it may be contained in a phrase or term which, under the rules of law, imports an indefinite failure of issue or a definite failure of issue, respectively. "Issue, when a word of limitation, means lineal descendants indefinitely, and hence *heirs of the body.*" 11 Am. & Eng. Enc. L. 869; 3 Jarman, Wills, 200. In England, before the wills act of 1837, the phrases, "if he have no issue," "if he die without leaving issue," "leave no issue," "for want of issue," "in default of issue," "if he die without issue," and other words of similar import, unexplained by the context, when made the contingency in devises of a limitation over of real property, were invariably construed to mean an indefinite failure of issue and to create an estate tail. 3 Jarman, Wills, pp. 296-301; Beach, Wills, § 195; Smith, Exec. Int. §§ 538, 563; 11 Am. & Eng. Enc. L. 899, 902, 904, 918. And thus, it is seen, the contention of the defendant in error is well sustained by text-writers.

The cases of authority on the question now under review are the English decisions prior to May 14, 1776, in accordance with our adopting act of 1784, and the decisions of this court; and we may also add the decisions of the English courts since the American Revolution which are in line with those prior thereto. These decisions, practically in an unbroken line, clearly settle the proposition that the devise under the first item in this will was an estate tail by implication in England, and that such class of entails, as well as estates tail express, were legitimately

within the statute de donis.   The design of that statute was to favor the issue in the entailment of real property, and hence the English courts always maintained that the only way to carry out this design fully was to apply the provisions of the statute to all devises of real property where the immediate devise to the issue, or the limitation over upon failure of issue of the first taker, unexplained by the context, meant an indefinite failure of issue. In Sonday's case, 5 Coke (revised ed.), 227, vol. 9 (old ed.), 127 b (A. D. 1611), the devise was to A, a son, and·if he have issue male of his body, then to such issue, and if he have no issue male of his body, then to B, another son.   Counsel for the first taker contended, and it was so resolved by the court, that the words "*if he hath no issue* male . . is as much as to say *if* [*he*] *dies without issue* male, which words are sufficient to create an estate tail in him." And in Counden *v.* Clerke, Hob. 29a (A. D. 1613), the devise was to A, a son, and *if he die without issue of* his body, to B; and the court said : " I am of opinion that the son is, by the proviso of this will, made tenant in tail to him and the heirs of his body; for the *implication* (which in a will is sufficient for that purpose) *is plain.*"   These two cases are of special importance as showing that the words *" if he has no issue "* mean the same as *" if he dies without issue,"* and that these latter words, following a devise to the first taker, indefinitely or generally, will raise an estate tail by implication in him and the issue.   And, as will be seen later on in this opinion, the case of Counden *v.* Clerke, defining and upholding estates tail by implication, has been followed by many other decisions.   In Boden *v.* Watson, Ambler, 398 (1761), s. c., Ibid. 478 (1764), there was a bequest to A for life, and *in case he has no heirs,* then to B.   Lord Hardwicke, who delivered the opinion in 1764, on the appeal of the case from the Master of the Rolls, held that the words " in case he has no heirs " meant an *indefinite* failure of issue; and, as personalty was not within the· statute de donis, the executory devise .was declared void for remoteness and the first taker was invested with the *absolute* fee to the property.   It follows that if this case had been a devise of real property, the words " in case he has no heirs " would, of course, have been held to mean an *indefinite* failure of issue and to give the first taker

an estate tail under the statute de donis. In Crooke v. De Vandes, 9 Ves. Jr. 197 (1803), the devise, under a will made in 1772, was to A and the heirs of his body, and *if he has no such heirs*, to B. Lord Eldon maintained (p. 202) that the words "if he has no such heirs" did not point "to any time less indefinite than a general failure of such issue." And he said (p. 203): "There is no doubt, where these words are applicable . . to freehold . . estates, they will give an estate tail in the freehold." In Romilly v. James, 6 Taunt. 263, 274-276 (1815), the devise, under a will made in 1734, was to A, and his heirs, and "*in case he die having no issue*," then to B, a nephew of the testator. The contentions were similar to those made in the present case. The court held that the devise did not create a defeasible fee in A, with an executory devise over, but did create an estate tail; because the words "in case he die having no issue" meant an indefinite failure of issue. Gibbs, C. J., said (p. 276): "It is urged that this devise does not create an estate tail, but a defeasible fee simple, with an executory devise over; but we find no authority for supporting that construction." This case is, therefore, practically "on all fours" with the one now under consideration. And in Cole v. Goble, 76 Eng. Com. Law R. 445 (1853), the devise in a will made in 1826 was to A, a granddaughter; but in the event of A "*dying without having any lawful issue*," then to other granddaughters, to be divided between them share and share alike. The court unanimously held, Jervis, C. J., rendering the main opinion, that the words "dying without *having*" issue imported an *indefinite* failure of issue, and that therefore A, the first taker, took an estate tail by implication. Cresswell, J., said, in referring to these words in wills devising real property, that "no person could have entertained a doubt that the words are sufficient to convey an estate tail." And Williams, J., said: "This is, in effect, nothing more or less than a devise to a person *and* her issue, which beyond all doubt gives her an estate tail."

In Forth v. Chapman, 1 P. Wms. 667 (1720), Lord Chancellor Parker said that, in a devise of freehold to A, and, *if he died leaving no issue,* then to B, his nephew, "the construction

should be, *if* [A] *died without issue generally,* by which there might be at *any time* a failure of issue." This view was unqualifiedly approved by Lord Talbot in Atkinson *v.* Hutchison, 3 P. Wms. 258, and by Lord Hardwicke in Southby *v.* Stonehouse, 2 Ves. Sr. 610, Lord Talbot saying that a devise to A and, *if he die without leaving issue,* then to B, applied to real estate, will give A an estate tail by implication. While these cases also recognize that the words "die leaving no issue," as applied to personal property, mean a definite failure of issue, the reasons for maintaining a different construction of them as to personal property are, first, because personalty is not within the statute de donis, and therefore the probable intent of the testator can be enforced; and, second, because when applied to realty, which is within the statute, the intent of the testator is to create an estate tail, but if his intent was otherwise it could not be carried out against the rules of construction placed upon these expressions, in upholding the design of the statute, as to devises of real property in favor of the issue. See also remarks of Sir William Grant, M. R., in Elton *v.* Elton, 19 Ves. Jr. 77. In Sparrow *v.* Shaw, 3 Bro. P. C. 467-472 (1729), which Lord Hardwicke says in Southby *v.* Stonehouse, supra, was "the case of great argument," the devise was in trust for A during her natural life and, if she die *leaving issue* of her body, then for such issue; but if she should die without issue as aforesaid, then to B, a godson of the testator. A, who claimed an estate tail, levied a fine and suffered a recovery to the use of herself and her heirs. She then conveyed to Sparrow and others. Upon her death without issue, B, the ultimate devisee, with the heir of the surviving trustee, leased the land to Shaw, who entered under the lease. Sparrow and others thereupon entered on the land and dispossessed him. Shaw sued them in ejectment at the court of Great Sessions, and the court, on December 21, 1721, decided in favor of the defendants. Shaw took the case to the court of King's Bench, which reversed the judgment of the court below at Easter term, 1728. See s. c. under name of Shaw *v.* Weigh, 2 Stra. m. p. 798. Sparrow and others then brought the case in Parliament to reverse this judgment of reversal. The contention in their behalf was, that under

the devise A had an estate tail, " for, that in construction of law,
a devise to one, with a limitation over to another, if such first
person dies without issue, creates an estate tail in that person,
as well as if the devise had been to him or her *and* the heirs of
his or her body."   The contention for Shaw was, that A did not
take an estate tail, and that the decision of the court of King's
Bench ought to stand.   After hearing argument and receiving
the report of the Lord Chancellor as to the views of the judges
of the court of King's Bench and Common Pleas and the Barons
of the Exchequer, the House of Lords adjourned until April
29, 1729, when the judges were ordered to attend to deliver
their opinions.   Accordingly, on that date, all the judges at-
tended, and, after they had delivered their opinions seriatim, it
was ordered and adjudged by the House of Lords, " That the
judgment given in the court of King's Bench, reversing a judg-
ment given in the court of Great Sessions,   .  .   should be re-
versed; and that the said judgment of the court of Great Sessions
should be affirmed."   In Denn ex dem. Geering *v.* Shenton, 1
Cowp. 410, 412 (February, 1776), Lord Mansfield held that the
words " in case he shall die without leaving issue," in a limita-
tion over of lands after the death of the first taker, " clearly show
it to be an estate tail."   In Tenny d. Agar *v.* Agar, 12 East,
253, 259-263 (1810), the devise was to A and his heirs, and to
pay an annuity to B, and if both died *without leaving child or is-
sue,* to C.   The unanimous opinion of all the judges was that the
words " without leaving child or issue" imported an indefinite
failure of issue and created an estate tail successively in A and
B.   And Justice LeBlanc said (p. 261):   " There is no case
where the words ' die without *leaving* issue,' simply, have been
adjudged to mean 'without leaving issue *at the time of the
death.*' "   In Dansey *v.* Griffiths, 4 Mau. & Sel. 61 (1815), the
devise was to D. R. Dansey and his heirs; but *if he should die
and leave no issue,* then to testator's son B.   The case was
argued before Lord Ellenborough, Chief Justice, and Justices
LeBlanc, Bayley, and Dampier.   These four justices, over their
signatures, say:   " We have heard this case argued by counsel,
and have considered it; and we are of opinion that D. R. Dansey
took an estate in tail general in the said estates under the said

will." In Franklin *v.* Lay, 6 Madd. 258, 260 (1820), the devise was to A, and *if he should die without leaving issue,* then to B. The Vice-Chancellor stated "that no authority would warrant him in construing the words 'leaving issue' as meaning issue living at the death. That leaving issue, as applied to real estate, imported a general failure of issue." He therefore sustained the contention that the first taker "took an estate tail by force of the limitation over being on a general failure of issue." And in Doe d. Cadogan *v.* Ewart, 7 Ad. & E. 636, 34 Eng. Com. Law R. 187, 192-202 (1838), under a will where the testator died in 1830, the devise was to A, her heirs and assigns forever; but in case she should *die without leaving issue,* then to B. Lord Denman, C. J., who delivered the opinion of the court, after reviewing many cases, held that A took an estate tail. The only seeming break in the line of the English cases as to the effect of the words "leaving no issue" was in Porter *v.* Bradley, 3 T. R. 143, 146 (1789), where the words were, "leaving no issue *behind him,*" and Lord Kenyon announced his dictum that he thought the words "leaving no issue," alone, should mean a definite failure of issue even when applied to real estate. This dictum was thus criticized by Lord Eldon in Crooke *v.* DeVandes, 9 Ves. jun. 203: "When I read the case of Porter *v.* Bradley, speaking with all due deference to the learned judge who expressed that dictum, it appeared to me that it went to shake settled rules to their very foundation. I had heard the case of Forth *v.* Chapman cited for years, and repeatedly by Lord Kenyon himself, as not to be shaken. I never knew it shaken." But Lord Kenyon had, previously to this criticism, in the case of Daintry *v.* Daintry, 6 T. R. 307-314 (1795), decided contrary to his aforesaid dictum in Porter *v.* Bradley; and thus the English cases remain uniform that a limitation over of real estate if the first taker should die *leaving no issue* or *without leaving issue,* unexplained, was upon an *indefinite* failure of issue, which created an estate tail.

In Goodright *v.* Cornish, 4 Mod. Rep. 256, 258 (1693), and in Boehm *v.* Clarke, 9 Ves. Jr. 580 (1804), which are two of many similar cases, the words "for want of issue" and "in default of issue," unexplained by the context, are respectively held to

mean a failure of issue generally. And Lord Hardwicke so defines " default of issue " in Southby v. Stonehouse, 2 Ves. Sr. 616. In Walter v. Drew, 1 Com. 372 (1723), the devise was that if A, a son, should die without issue, then and not otherwise, after A's death, the estate should go to B, another son; which the court held to be an estate tail by implication in A. In Brice v. Smith, Willes, 1 (1737), it is said (p. 3) : " It can not be doubted now, after so many solemn resolutions, but that if a man devises an estate to A and his heirs, and afterwards in his will give his estate to another in case A dies without issue, the subsequent words reduce A's estate only to an estate tail, and restrain the general word ' heirs ' to signify only ' heirs of the body.' So likewise if a man devise an estate to A, or to A for life, without saying more, and afterwards in the same will devise the estate to another in case A dies without issue, these subsequent words will enlarge A's estate by implication and give him an estate tail." In Beauclerk v. Dormer, 2 Atk. 308 (1742), the devise was: " I make [A] my sole heir, . . and if she dies without issue, then to go to " B. This Lord Hardwicke held to create an estate tail by implication in A. He said (p. 314) : " According to the opinion of Lord Hale, in King v. Melling [1 Vent. 228, decided in 1672], ' a devise to a man, *and if he dies without issue,* etc., is always construed to make an estate tail; . . for the law will carry over the word *issue,* not only to his immediate issue, but to all that shall descend from him. . . The word *issue* is nomen collectivum and takes in the whole generation ex vi termini, . . [and] in all acts of Parliament *exitus* is as comprehensive as heirs of the body.' " Lord Hale also stated, in his opinion in the above-named case, that " in Westm. 2, de donis, issue is made a term of equivalence to heirs of the body." And in Doe d. Cadogan v. Ewart, hereinbefore cited as to the force and effect of the words " die without leaving issue," Lord Denman said: " When an executory devise is limited to take effect after an indefinite failure of issue, the limitation over is void. Under the rule, if the limitation be to take effect after a dying without heirs or without issue generally, that is considered to be an indefinite failure of issue, and therefore void." He further said (p. 201) : " We may

here observe that this may perhaps be the last time of the question as to the effect of *dying without issue* being agitated; for, by the act of 7 W. 4, and 1 Vict. c. 26, s. 29, which takes effect at the beginning of this year [1838], all these expressions of 'die without issue,' or 'die without leaving issue,' or any other words which may import a failure of issue, shall be construed to mean a want or failure of issue in the lifetime of the party; and therefore the fifty-seven cases alluded to by Lord Ellenborough in Doe dem. Ellis *v.* Ellis, 9 East. 386, as having been mentioned by Lord Thurlow in Bigge *v.* Busley, 1 Bro. C. C. 190, as having occurred on this head, as well as several others since that time, may be considered as out of our reports, except as to wills made *before* the present year." This observation of Lord Denman will also directly apply to our act of February 17, 1854, which is on a line with the above-mentioned English wills act of 1837, and serve the double purpose of showing that in England before the wills act, which took effect on January 1, 1838, a devise like the one in the will now under review would have been held an estate tail by implication, because the real property devised was limited over upon an *indefinite* failure of issue, and it would therefore have been so held in this State before our act of 1854, for the same reason, which would give the absolute fee to the first taker under our act of 1821; and also that the same devise in England under a will executed after the English wills act of 1837 took effect, and in Georgia under a will executed after our act of 1854, would pass a different estate to the first taker, because the old law of entails could not then apply. Any English decisions since May 14, 1776, decided contrary to the English decisions prior to that time, are not cases of authority in this State. *Carter* v. *Jordan,* 15 *Ga.* 87. Like the decisions of courts in other States in this country, they are merely cases of opinion. *Thornton* v. *Lane,* 11 *Ga.* 500.

The only other cases we shall refer to upon this question will be those decided by this court upon wills subject to be construed by the law existing before our act of 1854. In *Robinson* v. *McDonald,* 2 *Ga.* 116 (3), 120-123, the bequest was to A, his heirs and assigns forever; but if he should die without a lawful heir of his body, the property bequeathed was to be equally

divided among three other sons of the testator. The court held, Judge Warner delivering the opinion, that the words "die without a lawful heir of his body" meant an indefinite failure of issue, which made the ulterior bequest a perpetuity, and, in any event, created an estate tail which our act of 1821 converted into a fee-simple estate in favor of the first taker. In *Carlton* v. *Price*, 10 *Ga.* 495, 498, Judge Warner, who rendered the opinion of the court, said: "When the intention of testators and the laws of the land are in conflict, the latter must prevail. The rule of law is, that whenever the testator limits his property to take effect after the death of the first taker *without heirs*, or *without issue*, subject to no other restriction, the limitation is void, as being too remote; such a disposition of property is considered as a limitation over upon an *indefinite* failure of issue, and is therefore an estate tail, which is prohibited by our law." In *Cook* v. *Walker*, 15 *Ga.* 465, Judge Lumpkin, who delivered the opinion of the court, said: "Had the property been given to Miss Walker for life only, with remainder to the heirs of her body, and in default of such heirs, to the present complainants, this being an estate tail, no one would doubt but that the fee would vest in Miss Walker, notwithstanding she took a life-estate only, by the terms of the instrument; and this, too, simply because the intention must yield to the unbending rules of the law, technical though they may be." In *Hollifield* v. *Stell*, 17 *Ga.* 280, the bequest was to A, and in case she "should die without an heir of her body," then to be equally divided among her brothers and sister. This was an estate tail by implication, under the English rules of interpretation as to devises of real property; and this court held, Judge Lumpkin rendering the opinion, that the bequest having clearly created an estate tail in the first taker, such estate was enlarged into a fee simple by our act of 1821. In *Gray* v. *Gray*, 20 *Ga.* 804, the bequest was to A and B, and should they, "or either of them, die without an heir begotten of their bodies, then their parts or part to be equally divided" among C, the testator's named sons and the survivor. The majority of the court held that the bequest created an estate tail by implication in A and B; that such estates tail were within the statute de donis; and that, therefore, the first taker took

the absolute fee under our act of 1821.   In *Hose* v. *King,* 24 *Ga.* 424, the bequest was to A, a daughter, and the lawful heirs of her body forever; if she should die without leaving a lawful heir of her body, then the property to revert to the testator's estate and be divided among his other heirs.   Judge Lumpkin, who delivered the opinion of the court, said: "According to the construction put upon the statute de donis by the English courts, as to real estate, the limitation over in this will is too remote and void.   And that under the act of 1821, as expounded by a majority of this court (myself·dissenting) in *Gray* v. *Gray,* 20 *Ga.* 804, [A], the daughter of the testator took an absolute fee." In *Claxton* v. *Weeks,* 21 *Ga.* 265, the bequest was:   In case of no heir, I wish A, as executrix, to give the property to B, C, and D, equally, when A, my executrix, thinks prudent.   Judge Lumpkin, who rendered the opinion of the court, held (p. 269), that the words "in case of no heir" did not create an estate tail, first, because no estate in freehold preceded the words; and, secondly, because the bequest was to be divided within the lifetime of the named executrix, which made the words mean a definite failure of issue.   It is therefore clearly inferable, from these two reasons, that if the bequest had been to "A, and in case of no heir, to B," the court would have held that the bequest created an estate tail beyond all doubt, and that would have made a parallel case with the one now under consideration.   In *Brown* v. *Weaver,* 28 *Ga.* 377, the bequest was to A and B and their children (they then having no children), and if they shall die without issue, then over.   The court held, Judge Stephens delivering the opinion, that as the bequest would create an estate tail in real property, A and B, under our act of 1821, took the absolute fee.   In *Pournell* v. *Harris,* 29 *Ga.* 736, the bequest was to A for life, and at her decease to the heirs of her body lawfully begotten; but if she should die without issue, then over.   The will was made in Virginia, where in 1776 the legislature had passed an act, like our act of 1821, enlarging estates tail into fee-simple estates.   It was held, Judge Lyon delivering the opinion, that A took an estate tail which the Virginia act of 1776 converted into a fee-simple estate.   In *Walls* v. *Garrison,* 33 *Ga.* 341, the devise was an estate tail by implication under the Eng-

lish law. Judge Jenkins, who delivered the opinion of the court, said: "The dispositive words in the will . . are, 'I give and bequeath to my beloved wife, Mary Bird, the whole of the balance of my estate; . . and should my wife, Mary, die without a natural heir of her body, it is my will and desire that the whole of my estate go to my brother, William B. Bird.' Upon the death of Mary Bird, leaving no lineal descendant surviving, is this limitation over good? This is not an open question in Georgia. In *Hollifield* v. *Stell,* 17 *Ga.* 280, *Childers* v. *Childers,* 21 *Ga.* 377, and *Brown* v. *Weaver,* 28 *Ga.* 378, it is held that these and other equivalent words create an estate tail under the statute de donis conditionalibus, and therefore, under our act of 1821, Cobb's Digest, 169, vest in the first taker an absolute unconditional estate, unless there be superadded words excluding the idea of an indefinite failure of issue. Are there such words in the clause under consideration? It is contended that the limitation over *to a person in being* has that effect. But on that point it is expressly ruled otherwise in *Hollifield* v. *Stell,* supra, wherein several authorities sustaining the ruling are cited." In *Strong* v. *Middleton,* 51 *Ga.* 462, the devise was to A, and his heirs forever; and if he "should die without a lawful begotten heir of his body," then to B. Judge Trippe, delivering the opinion of the court, held that A took the absolute fee, as the limitation over was void for remoteness. After citing *Hollifield* v. *Stell, Gray* v. *Gray, Childers* v. *Childers, Hose* v. *King, Brown* v. *Weaver,* and *Walls* v. *Garrison,* supra, he said: "The question is not an open one. . . Whatever difficulties may have been created by the two cases referred to in 30 Georgia Reports, there have been several later ones which fully recognize the former rulings." And in *Lofton* v. *Murchison,* 80 *Ga.* 391, Chief Justice Bleckley, delivering the opinion of the court on a will probated in 1847, said: "The law of Georgia inhibits entails, and by the act of 1821 . . enforces the inhibition by enlarging them into estates in fee simple."

A fee conditional at common law, whereby an estate was given simply to A and his issue, or to A and the heirs of his body, in exclusion of collateral heirs, and A took the fee as soon as any issue was born or it reverted to the donor's estate if no

issue was born (2 Bl. Com. 110), was the origin of the statute
de donis allowing the entailment of real property in favor of the
issue. 2 Bl. Com. 112; 2 Minor's Inst. (3d ed.) m. pp. 78, 79;
Tiedcman, Real Prop. §§ 45, 46.    After the statute de donis,
such fees conditional, as applied to real property, were also in-
variably declared to be estates tail in England (2 Bl. Com. 112;
3 Jarman, Wills, 89, 94, 203); and in Georgia, as applied to
both real and personal property, they have always been held to
be estates tail, and vest the absolute estate in the first taker un-
der our act of 1821, unaffected by the act of 1854 or any subse-
quent law.    *Kemp* v. *Daniel,* 8 *Ga.* 387 (top); *Smith* v. *Dun-
woody,* 19 *Ga.* 237, 258, 259; *Childers* v. *Childers,* 21 *Ga.* 378;
*Carroll* v. *Carroll,* 25 *Ga.* 260, 262; *Andrews* v. *Bonner,* 26
*Ga.* 520; *Caraway* v. *Smith,* 28 *Ga.* 541; *Whatley* v. *Barker,*
79 *Ga.* 790; *Craig* v. *Ambrose,* 80 *Ga.* 134; *Ewing* v. *Shrop-
shire,* 80 *Ga.* 374; *Griffin* v. *Stewart,* 101 *Ga.* 720; Civil Code,
§ 3085.    An executory devise which was limited upon a definite
failure of issue, as then understood, was valid at the time the
will in this case took effect.    *Mayer* v. *Wiltberger, Ga: Dec.,*
part II, 20, 26; *Carlton* v. *Price,* 10 *Ga.* 498; *Groce* v. *Ritten-
berry,* 14 *Ga.* 232; *Burton* v. *Black,* 30 *Ga.* 638; *Hill* v. *Alford,*
46 *Ga.* 250, 251.    But at that time an executory devise which
was limited upon an indefinite failure of issue, as then defined,
was void for remoteness.    *Mayer* v. *Wiltberger,* supra; *Robinson*
v. *McDonald,* 2 *Ga.* 116 (3); *Carlton* v. *Price,* supra; and the
cases hereinbefore cited on the question of estates tail.    See,
also, Smith, Exec. Int. §§ 709, 714; 1 Jarman, Wills, 519 and
notes p and 15, where many cases are collected.    Accordingly,
an apposite class of a determinable or defeasible fee (called by
some judges a base or qualified fee), with a valid executory de-
vise over, at the time the will now being construed took effect, is
one made to A, and upon his dying without child or children, or
dying without issue living at the time of his death, or other words
importing a definite failure of issue, then to B, whereby the ab-
solute  fee became vested in A's estate upon his leaving issue at
his death, or passed to the executory devisees if he died with-
out leaving such issue.    It seems like grasping at a shadow for
persons to claim real property in this State as executory devisees

under a devise governed by the law existing before our act of 1854, and which devise created an estate tail by implication in England, on the grounds either that such estates tail were not included in the statute de donis or that the laws of Georgia at that time construed such estates to pass an estate for life to the first taker, with remainder to his issue, if any, and if none, over to the executory devisees. If estates tail by implication were not included in the statute de donis, the limitations over in such estates were always made upon an indefinite failure of issue, which of itself, as above shown, defeats the claim of the executory devisees, on the ground that such devise to them was void for remoteness. And it follows that, under the law existing before our act of 1854, such a result of cutting up an estate tail by implication in the manner above stated was absolutely impossible. That act, which is on a line with the English wills act of 1837, enacts that " dying without heirs, " " dying without issue," and other expressions which had theretofore meant an indefinite failure of issue shall thereafter mean a definite failure of issue, but is silent as to the nature of the estate taken by the first taker and the issue. There is a dictum in one case (*Tucker* v. *Adams,* 14 *Ga.* 583) that the act implies that the first taker is to have a life-estate with remainder to the issue, and if none, then to the executory devisees; and that this was a declaratory act. But in *Ewing* v. *Shropshire,* 80 *Ga.* 381, Chief Justice Bleckley, who delivered the very able opinion of the court in that case, after reviewing the laws applicable to this subject, thus speaks about the codification of the law of estates tail by implication in our code: " This carving up of any and all estates tail by implication into a particular estate and a remainder is wholly new." His position is undoubtedly correct; and that the act of 1854 is not a declaratory statute of any former law, and that it converted into a defeasible fee what before the act was an estate tail by implication, see also *Worrill* v. *Wright,* 25 *Ga.* 657, 659. Therefore the words in this will, " in case she has no issue," unexplained by the context (the will having been made in 1849 and the testator having died in 1850), must fall within the definition of an indefinite failure of issue. " Issue, " in this term, can include an unborn grandchild,

or great grandchild, and so on in infinitum in the line of the first taker's issue, which clearly creates an estate tail under the statute de donis, as ruled by all the English decisions, and therefore gives the first taker the absolute fee under our act of 1821. To restrict the meaning of this term to a definite failure of issue, in order to make the executory devise valid, it would be necessary to add words to it so as to make the term read, "in case she has no issue living at the time of her death." This, of course, we have no legal right or power to do, as we must construe the words, as we find them in the will, according to the rules of interpretation adopted by the English courts for centuries and adhered to by many decisions of this court. To disregard these rules of interpretation at this late day "would not only frustrate the great landmarks of property but would introduce a latitude of construction boundless in its range and pernicious in its consequences."

The cases cited in the brief of the learned counsel for the plaintiffs-in error are distinguishable from the case at bar. We need only refer to those cited from the reports of this court to show that they do not conflict with the views we maintain in this case. In *Sharman* v. *Jackson,* 30 *Ga.* 224, and *Herring* v. *Rogers,* 30 *Ga.* 615, there are no limitations over to executory devisees, and the devises are to A for life, and *at his death* to be equally divided between the heirs of his body; which is the same, as held in those cases, as giving a remainder to the heirs of A's body living at his death. The case of *Wetter* v. *Cotton Press Co.,* 75 *Ga.* 540, which counsel for plaintiff in error contend should have been held to be a defeasible fee in Mrs. Wetter, could only be so construed because the limitations over were upon a definite failure of issue, the devise expressly stating if she should "die without issue as aforesaid [that is without leaving issue or lineal heirs] *then living.*" And the reasons which impelled the court in that case to hold that Mrs. Wetter took a life-estate are wholly inapplicable to the case now under consideration. The case of *Matthews* v. *Hudson,* 81 *Ga.* 120, was not only based on a will probated in 1854, but the property was limited over upon the first taker dying without child or children, which would have been a definite failure of issue as

·well before as after the act of 1854. . The cases of *Gibson* v̇. *Hardaway,* 68 *Ga.* 370, *Daniel* v. *Daniel,* 102 *Ga.* 181, and ·*Chewning* v. *Shumate,* 106 *Ga.* 751, whether rightly or wrongly decided, have no application to the present case, because they are based on wills made not only after the act of 1854 but even since ·the code.    The cases of *Groce* v. *Rittenberry,* 14 *Ga.* 232, *Sheftall* v. *Roberts,* 30 *Ga.* 453, *Forman* v. *Troup,* 30 *Ga.* 496, *Burton* v. *Black,* 30 *Ga.* 638, *Tennell* v. *Ford,* 30 *Ga.* 707, and *Hill* v. *Alford,* 46 *Ga.* 250, which are based upon wills made before ·the act of 1854, and the case of *Greer v. Pate,* 85 *Ga.* 552, which was upon a deed, all declared defeasible fees in the first takers only because the executory devises were limited in each case upon a definite failure of issue, as is clearly shown in some of these cases by the terms themselves without the aid of super.added words, and in others by the use of such words, though the ·court seems to have somewhat stretched the superadded words in *Forman* v. *Troup* to reach the conclusion of a definite failure ·of issue in that case.    In *Sheftall* v. *Roberts,* which is a case especially relied on, the words "leaving no issue" were explained to clearly mean grandchildren of the testator, by the superadded words, "they [the issue] shall not inherit their father's or mother's portion of my estate before they attain the age of eighteen years."   In *Tennell* v. *Ford,* the devise was to A and B, and if B should die before arriving· at age *or* without issue, his share to go to the survivor.    The court held that "or" should be construed "and," so as to mean if B should die without issue before arriving at age, which would be a definite failure of issue. This ruling was correct, and in nowise affects the contention of the defendant in error.    See Smith, Exec. Int. §§ 235, 236, where the reason for the rule is explicitly stated with ample citation of authority.    And in *Burton* v. *Black,* Judge Stephens said (p. 640) that a devise to A for life, and if he die without issue, to B, would create an estate tail by implication.    The ·other cases arising on wills made before the act of 1854, which .are more apparently allied to the present case, are *Harris* v. *Smith,* 16 *Ga.* 545, and *Griswold* v. *Greer,* 18 *Ga.* 545.    In the former, the devise was to A for life, with remainder to B; provided, nevertheless, if B should die leaving no lawful heirs,

then, in that case, to be equally divided share and share alike between the lawful children of C. Judge Starnes first announced three reasons to support his contention that the words "die leaving no lawful heirs," in a devise of real property, meant a definite failure of issue: (1) "That there is nothing in the statute [de donis] which sanctions the idea that when one was said to die without issue or heirs reference was had to a failure of issue at any remote time after his death" (p. 552). To which we answer that the statute, as quoted in part by him, says: "If issue fail (in that there is no issue at all) or if any issue be and fail by death, or heir of the body of such issue failing;" that the statute has always been construed in England to an effect just the reverse of his opinion; and that in 1 Washburn on Real Property (5th ed.), 104, estates tail, the source of which is the statute de donis, are defined to be "estates of inheritance, which, instead of descending to heirs generally, go to the heirs of the donee's body, which means his lawful issue, his children, and through them to his grandchildren in a direct line, so long as his posterity endures in a regular order and course of descent." (2) That while the words, "having no issue," "dying without leaving issue," and "die leaving no lawful heirs," were uniformly construed in England to mean an indefinite failure of issue, when applied to real property, yet the last two expressions were construed by the English courts to mean a definite failure of issue when applied to bequests of personal property, which latter construction should be, adopted in this State as the proper one in cases of both personalty and realty; and that it is not possible "that this double meaning   .   . can belong to the same terms of the same law"—the statute de donis. To this we answer that the English courts, when construing these words as to personalty, did not have before them the statute de donis and the question of an estate tail, because personalty was not within the statute and could not be entailed, and hence there was nothing in the way of enforcing the probable intent of the testator in such cases; that when they construed these words as to realty, the statute de donis and the question of an estate tail were before them, the statute having reference to the entailment of real property, and in such cases they held that

the probable intent of the testator was to entail the property, and
if not, that the latter intent could not contravene the design of
that statute and the invariable construction of these expressions
when applied to devises of real property; and that our act of
1821 says that whenever expressions in gifts, grants, bequests,
devises, and conveyances, made in this State, "would have passed
an estate tail in *real property* by the statute de donis, they are
to be held and construed to vest in the person or persons to
whom the same may be made or executed [the first taker] an
absolute, unconditional fee-simple estate." (3) That the reason
for the statute de donis was to give the "heir at law" the prop-
erty, and hence, as primogeniture had been abolished in this
State, the reason for the conventional rule of construction of the
statute de donis had been repealed. To which we answer that
this reason imputes to the legislature of this State the perform-
ance of a useless task in passing the act of 1821; and that the
statute de donis itself shows, and it is declared in numerous
English decisions, that its design was in favor of the *issue*,
which means all the issue, male and female, unless the devise
was specially to male issue or specially to female issue, and
hence primogeniture, which was a canon in the law of *descent*
of real property, clearly had nothing to do with this question.
Moreover, Judge Starnes seems to have doubted his own prem-
ises, because, after saying "should we be wrong in all that we
have said," he finally seized upon the words "then in that case"
as superadded words qualifying the words "die leaving no law-
ful heirs," construed the word "then" to be an adverb of time
relating to the death of the first taker, so as to make "lawful
heirs" mean children, and was thus enabled to decide that the
first taker in that case took a defeasible fee subject to be de-
feated in favor of the executory devisees should he die without
then leaving children. The word "then" in the case of *Harris*
v. *Smith* is referred to in *Sanford* v. *Sanford, 58 Ga.* 260, as
an adverb of time. It is unnecessary, however, for us to decide
whether this construction of the words "then in that case" is
correct, as no such superadded words appear in the devise in the
case now under consideration, though cases can be cited to show
that the very same words have been differently construed. The

terms òf the will construed in *Griswold* v. *Greer* were: "I . . bequeath and devise to my said wife, for and during her natural life, the whole of the residue of my estate, both real and personal. . . . And *at the death of my said wife,* it is my will that the whole of the above-mentioned residue of my estate result to and vest absolutely in fee simple in my daughter [B], if *then* living, *and* her issue, if any; but if my said daughter should, *at that time,* be dead without issue, or afterwards die, leaving no issue, then and in either of said events, it is my desire and will that the said residue of. my estate be equally divided among the lawful children of" C, D, and E. Here "issue" in the preceding terms, "and her issue, if any," and "dead without issue," having reference to issue of the daughter living at the death of the testator's wife, manifestly means a definite failure of issue, viz., children of B, the daughter; and therefore it might, though we do not say it would necessarily, in this particular case make "issue" in the subsequent term, "leaving no issue," also mean children of B, the daughter. 3 Jarman, Wills, 236 and note p. Adopting this view, the devise may be paraphrased thus: To A for life, and *after her death* absolutely and in fee simple to B and her issue (children), if any; but if B be dead *at that time* without issue (children), or dies afterwards leaving no issue (children), then and in either of these events to the children of C, D, and E. And this is the way the devise in this same will is read in *Payne* v. *Rosser,* 53 *Ga.* 662. Moreover, the additional words "then and in either of these events" are not in the present case. And what we have said above in answer to the three reasons advanced by Judge Starnes in the case of *Harris* v. *Smith* will also apply as answers to the same reasons set forth by him in his opinion under the second head of the case of *Griswold* v. *Greer.*

It follows, therefore, as the law of the present case is clearly on the side of the defendant in error, that the judgment of the court below should be

*Affirmed. All the Justices concurring, except Fish, J.; absent.*